UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH MOTLEY, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| VERSACE USA, INC., and | ) | |
| SECURITY INDUSTRY | ) | |
| SPECIALISTS, INC. | ) | |
| | ) | |
| *Defendants.* | ) | **Jury Trial Demanded** |

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, Kenneth Motley ("Motley" or the "Employee"), by and through his attorneys of the law firm COLE SADKIN, LLC, and for his Complaint against Defendants, Versace USA, Inc. ("Versace"), an Illinois for-profit corporation, and Security Industry Specialists, Inc. ("SIS"), an Illinois for-profit corporation, (collectively, the "Joint Employers"), and hereby states as follows:

**JURISDICTION AND VENUE**

1. This suit is brought to secure the protection of, and to redress the deprivation of, rights secured by the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) ("Title VII").

2. There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a Judge.

3. Jurisdiction of this Court is invoked pursuant to the provisions of 28 U.S.C. § 1331,

1

28 U.S.C. § 1343(a)(3), 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 1988, and 42 U.S.C. § 12117.

4. Venue is proper in this Court by virtue of 28 U.S.C. § 1391(b).

5. Plaintiff, Kenneth Motley, has met all administrative prerequisites to suit in that he filed a timely charge of discrimination against Versace with the Equal Employment Opportunity Commission ("EEOC") as Charge No. 440-2017-01644, and filed a timely charge of discrimination against SIS with the EEOC as Charge No. 440-2018-02216, copies of which are attached hereto and made a part of Plaintiff's **Exhibits 1 and 2.** Plaintiff received Right-to-Sue letters on or about January 11, 2018 and January 23, 2018, copies of which are attached hereto and made a part of Plaintiff's **Exhibits 3 and 4.** Plaintiff brings this action within the limitations periods of 29 U.S.C. § 621 *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 2000e*t seq.*

## PARTIES

6. Plaintiff Kenneth Motley resides in Illinois and was employed by Security Industry Specialists, Inc. and assigned to co-employer Versace USA, Inc. in 2016.

7. Defendant Versace USA, Inc. is a New York corporation registered to do business within the State of Illinois and an employer within the definitions of 29 U.S.C. § 630(b), and 42 U.S.C. § 2000(e)(b). At all times relevant hereto, Versace was engaged in the business of selling retail goods and apparel.

8. Defendant Security Industry Specialists, Inc. ("SIS Inc.") is a California corporation registered to do business within the State of Illinois and an employer within the definitions of 29 U.S.C. § 630(b), and 42 U.S.C. § 2000(e)(b). At all relevant times hereto, SIS Inc. was engaged in the business of provided security staffing services.

## STATEMENT OF FACTS

9. Motley is an African-American male.

10. Motley is also disabled. He has scar tissue in his right knee that causes fluid build-up and prevents him from standing for extended periods of time without rest.

11. In June 2016, Motley began his employment with SIS Inc. as a security guard.

12. SIS Inc. places security personnel at locations requested by its clients.

13. Motley informed his supervisor, Ryan Flaska ("Flaska") of his disability when he was hired at SIS Inc.

14. Motley received no indication from SIS Inc. or Flaska that his disability would be an issue that would affect his placement with SIS' clients.

15. On or about June 7, 2016, Motley was assigned to provide security services to Versace's Chicago location located at 933 Rush Street, Chicago, IL 60611 (the "Store" and "Versace").

16. SIS Inc. had direct and immediate control over the terms of Motley's assignment with Versace.

17. Versace controlled the conditions of Motley's daily workplace activities.

18. Motley was required by Versace to work at the Store from 10:00 a.m. to 6:00 p.m. Motley was allowed one (1) hour for lunch, and two (2) breaks during which he could leave the Store. Versace also required Motley to follow Store protocol regarding how he was to provide the security services.

19. Motley was to observe all activities in the Store and, as needed, move to areas of the Store in which a security issue was perceived or reported. Further, Motley was instructed to address any security issues within Versace pursuant to the Store's procedures.

20. Immediately upon his assignment with Versace, Motley verbally informed Ann Wallace ("Wallace"), the Store's general manager, that he had a disability related to his knees.

21. During this conversation, Motley requested that Versace provide an accommodation of Motley's disability in the form of a stool so that Motley was able to rest his knee for short periods of time throughout the day.

22. Wallace immediately approved Motley's accommodation request, and Motley was permitted to utilize a stool in an inconspicuous location near the entryway of the store.

23. Motley's periodic use of a stool to rest one knee while standing, and occasional use of a chair due to his disability, did not hinder his job performance. Further, Motley did not rest his knee when customers were in the Store.

24. Motley performed his job duties while taking periodic short rests of his knee due to his disability for several weeks without incident.

25. While employed with SIS Inc. and assigned to Versace, Motley was subjected to race discrimination.

26. Immediately after he began his assignment with Versace, Motley was ignored and avoided by the Store's staff. The Store's management and staff treated Motley with disdain, and in response to reasonable questions regarding the performance of his job duties, Versace staff was often non-responsive or openly hostile.

27. Due the hostile treatment he was receiving, Motley regularly corresponded with Flaska, relating his discomfort with the comments and the environment at Versace.

28. On one occasion when no customers were in the Store, Motley asked if he might qualify for an employee discount.

29. In response, Motley was laughed at by the staff members present and was not given an answer.

30. In or around early August 2016, Elud Corona ("Elly"), the manager on duty at the

time, observed Motley sitting down. She verbally instructed him to "get up" and stated that he was expected to stand during his shift.

31. Motley responded by telling Elly that Wallace had approved Motley's accommodation request to periodically rest his knee due to his disability.

32. Elly appeared upset by Motley's response but did not raise the issue with him again.

33. The Versace staff and management's hostile treatment of Motley worsened after this dialogue with Elly.

34. On or about August 13, 2016, Motley received an email from Flaska informing Motley that his assignment with Versace was being terminated.

35. In that communication with Motley, Flaska forwarded emails SIS Inc. had received from Wallace and Elly regarding Motley.

36. In the forwarded emails, Ms. Wallace accused Motley of being too chatty with the Store staff, appeared to withdraw her previous approval of Motley's accommodation request, and requested that Flaska replace Motley with someone else, stating, "*PLEASE, we greatly prefer Ryan, Chaun, or someone who better fits the demeanor of our store*."

37. Upon information and belief, Ryan and Chaun are both Caucasian.

38. Subsequent to the termination of his assignment with Versace, Motley was not placed with any other SIS Inc. clients for regular assignments.

39. Motley was occasionally placed at other stores when someone needed to fill in for the regular SIS Inc. security guard.

40. SIS Inc. did not give Motley any work assignment of any kind for six (6) months and on or about March 10, 2017, Motley was presented with an Employee Separation Form informing him that his position was being eliminated.

41. Motley's employment with SIS Inc. was formally terminated on or about March 17, 2017.

**COUNT I**
**DISCRIMINATION BASED ON A DISABILITY**
**(42 U.S.C. §12101 *et seq.*)**
**(Versace USA, Inc. and Security Industry Specialists, Inc.)**

42. Plaintiff incorporates and restates each of the above paragraphs 1 through 41 as if fully set forth herein.

43. Discrimination as defined by the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

44. Discrimination as defined by the ADA further includes "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(B).

45. Motley is a "qualified individual with a disability" as defined in 42 U.S.C. 12131(2) in that he suffers from arthritis and knee pain related to a previous knee injury that substantially limits his ability to stand for long periods of time without rest, and was qualified for work assignments from SIS Inc., and was qualified and capable of providing security services to Versace at the Store with the reasonable accommodation.

46. Consistent with Ann Wallace's original approval, Plaintiff's reasonable accommodation did not present undue hardship on the Store.

47. Plaintiff's reasonable accommodation approval was withdrawn, and he was subsequently denied the reasonable accommodation of a stool for short periodic rests due to his disability.

48. Plaintiff was damaged in that he was deprived of the right to continue his work assignment at the Store.

49. The Store's refusal to accommodate his disability and communications to SIS damaged his employment with SIS Inc.

50. Versace, through its managers, requested SIS Inc. to replace Plaintiff and reverse the Store's prior agreement to accommodate his disability by communicating false information to SIS Inc., including that he chatted too frequently with the Store's staff, and also made derogatory remarks in front of the staff.

51. SIS Inc. knew of Versace's failure to reasonably accommodate Plaintiff's disability and failed to take corrective action within its control, thereby participating in and enabling the discrimination.

52. SIS Inc. furthered the discrimination by Versace in removing Plaintiff from the Store, limiting his future assignments, and terminating him from SIS Inc.

53. The aforementioned acts and omissions of Versace and SIS Inc. constitute unlawful discrimination on the basis of Plaintiff's disability in violation of the ADA, as amended, 42 U.S.C. 12101 *et seq*.

54. The aforementioned acts of discrimination were willful and malicious, or done with reckless disregard for the rights of Plaintiff.

55. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged, and this suit for declaratory judgment, back pay, compensatory and punitive damages is

his only means of securing adequate relief.

## COUNT II
## DISCRIMINATION BASED ON RACE
## (42 U.S.C. § 2000e)
## (Versace USA, Inc. and Security Industry Specialists, Inc.)

56. Plaintiff incorporates and restates each of the above paragraphs 1 through 41 as if fully set forth herein.

57. Title VII of the Civil Rights Act of 1964 ("Title VII") provides that it is unlawful employment practice for an employer to "discharge any individual or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's race." 42 U.S.C. § 2000e-2(a)(1).

58. Title VII further provides that it is unlawful employment practice for an employer to "limit, segregate, classify employees in any way that would deprive or tend to deprive an individual of employment opportunities, or otherwise would adversely affect his status as an employee because of the individual's race." 42 U.S.C. § 2000e-2(a)(2).

59. Plaintiff is a person protected by the aforementioned provisions of 42 U.S.C. § 2000e.

60. Plaintiff has exhausted his required administrative remedies.

61. Defendants, separately and as joint employers through their agents and employees, engaged in a pattern and practice of unlawful racial discrimination in violation of 42 U.S.C. § 2000e in connection with their treatment of Plaintiff and the terms and conditions of his employment.

62. Versace, through its agents and employees, treated Plaintiff with hostility and sought to have Plaintiff replaced with a white security guard in Versace's email request to SIS Inc.

63. SIS Inc. knew of the racial discrimination against Plaintiff and failed to take

corrective action within its control, thereby participating in and enabling the racial discrimination.

64. SIS Inc. separately engaged in discriminatory treatment of Plaintiff based on race by yielding to Versace's request to replace Motley without properly investigating the discriminatory reasons provided to SIS Inc., removing him from Versace, subsequently refusing Plaintiff regular assignments and terminating his employment due to the discriminatory reasons.

65. Defendants knowingly and intentionally discriminated against Plaintiff on the basis of race in violation of Title VII.

66. This discrimination was done willfully and with malicious and reckless disregard for the rights of Plaintiff.

67. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged, and this suit for declaratory judgment, back pay, and compensatory and punitive damages is his only means of securing adequate relief.

**COUNT III**
**RETALIATION**
**(42 U.S.C. § 12203)**
**(Versace USA, Inc. and Security Industry Specialists, Inc.)**

68. Plaintiff incorporates and restates each of the above paragraphs 1 through 41 as if fully set forth herein.

69. Pursuant to the ADA, "it shall be unlawful to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

70. Defendants, separately and as joint employers, unlawfully retaliated against Plaintiff for communicating a lawful reasonable accommodation request and stating that the

General Manager had agreed to the request to his disability by terminating his employment.

71. SIS Inc. agreed to remove Plaintiff at Versace's request and subsequently unlawfully retaliated against Motley by refusing him regular assignments until it terminated his employment in March of 2017.

72. This retaliation was done willfully and with malicious and reckless disregard for the rights of Plaintiff.

73. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged, and this suit for declaratory judgment, back pay and compensatory and punitive damages is his only means of securing adequate relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Kenneth Motley, respectfully requests that this Honorable Court enter judgment and order a permanent injunction prohibiting Defendants from further acts of disability and race discrimination; award Plaintiff lost wages, including back pay, front pay and lost benefits; award prejudgment interest; award Plaintiff costs of litigation, including reasonable attorneys' fees and costs; award Plaintiff compensatory damages as permitted under federal and state law; award Plaintiff punitive damages for willful and wanton conduct as permitted under law; and grant such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial pursuant to Fed. R. Civ.Proc. 38(b) on all issues of fact and law raised by the allegations in this Complaint.

Dated: April 3, 2018						Respectfully Submitted,

							By: /s/ Mason S. Cole
								Attorneys for Plaintiff

							COLE SADKIN, LLC

Mason S. Cole (6307727)
Stephanie L. Matthews (6200066)
20 South Clark Street, Suite 500
Chicago, IL 60603
(312) 548-8610